835 A.2d 1175

**Stephanie SMACK**

v.

**DEPARTMENT OF HEALTH AND MENTAL HYGIENE.**

**No. 118, Sept. Term, 2000.**

Court of Appeals of Maryland.

Nov. 18, 2003.

Robin R. Cockey (Cockey, Brennan & Maloney, P.C., on brief), Salisbury, for petitioner.

James C. Anagnos, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., ELDRIDG *, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA JJ.

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled

BELL, C.J.

Presented in this case is the issue whether termination of a probationary employee, for whom cause for termination may exist and of which the probationary employee has been apprised as the basis for the termination, may proceed without complying with Maryland Code (1987, 1997 Replacement Volume) § 11–106 of the State Personnel and Pensions Article.[1] Stated differently, the issue is whether a termination "related to employee misconduct," occurring during an employee's probationary period, a "disciplinary action" within the meaning of § 11–106, is subject to the requirements of that provision. The trial court determined that the probationary employee could be terminated without regard to § 11–106. The Court of Special Appeals agreed and, therefore, affirmed. *Smack v. Department of Health and Mental Hygiene,* 134 Md.App. 412, 759 A.2d 1209 (2000). We issued the writ of certiorari to review this important question. 362 Md. 359, 765 A.2d 142 (2001).

The facts out of which the present controversy arose are not in dispute. At the time of her termination, the petitioner,

---

pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Maryland Code (1987, 1997 Replacement Volume) § 11–106(a) of the State Personnel and Pensions Article addresses the "[d]uty of appointing authority prior to imposing sanctions." It provides:

"(a) Procedure.—Before taking any disciplinary action related to employee misconduct, an appointing authority shall:
"(1) investigate the alleged misconduct;
"(2) meet with the employee;
"(3) consider any mitigating circumstances;
"(4) determine the appropriate disciplinary action, if any, to be imposed; and
"(5) give the employee a written notice of the disciplinary action to be taken and the employee's appeal rights."

Subsection (b) gives the appointing authority 30 days to act, counting from when it "acquires knowledge of the misconduct for which the disciplinary action is imposed." See *W. Cor. Inst. v. Geiger,* 371 Md. 125, 143, 807 A.2d 32, 43 (2002). COMAR 17.04.05.04D, the regulation implementing the statute, is phrased almost identically, adding only that which essentially is implicit, that the appointing authority shall "[n]otify the employee of the misconduct and provide an explanation of the employer's evidence."

Stephanie Smack, was a probationary employee of the Somerset County Health Department. *See* § 7–402 of the State Pensions and Personnel Article.[2] Having been employed on October 8, 1997 as a Social Worker I and assigned to the Addiction Unit, her probationary period would not have expired until April 8, 1998. § 7–402(a).

The petitioner's duties required her to conduct weekly group therapy sessions in Crisfield, Maryland. The group therapy session scheduled for January 29, 1998 was to begin at 2:00 p.m. On that day, there was flooding in the area, the result of a "nor'easter," as the major storm causing it was described. The petitioner's supervisor and three of the group members nevertheless were able to get to the group session and therefore, were present. The petitioner did not attend the group therapy session.

According to the petitioner, she left her office at approximately 1:45 p.m., the location of the group therapy session being approximately a ten-minute drive. When the petitioner approached the location of the session, she was told by an unnamed person that the street leading to the group therapy location was under water and that members of the group had not been able to make it because of the flooding. The

---

**2.** Maryland Code (1987, 1997 Replacement Volume) § 7–402 of the State Personnel and Pensions Article provides:

"(a) Requirement.—Each employee subject to this subtitle is required to complete a 6–month probationary period as the final step in: "(1) the employee's initial appointment to a position in the State Personnel Management System;

"(2) the employee's appointment to a position in the skilled or professional service following a competitive promotion; and

"(3) except as provided in subsection (b) of this section, the employee's appointment to a position in the skilled or professional service following a reinstatement.

"(b) Exceptions.—An employee is not required to serve a probationary period if the employee is reinstated within 1 year after the employee's separation from State service to a classification in which the employee had previously completed a probationary period.

"(c) Successful completion.—To successfully complete a probationary period, an employee is required to demonstrate proficiency in the assigned duties and responsibilities of the position to which the employee is appointed."

petitioner also observed two vehicles having difficulty traversing the flooded street, and a radio broadcast reported rising tides. As a result, she determined that her car could not make it through the flooded streets. Consequently, she returned to her office, from where she called, without success, the facility where the group therapy session was to be held. The petitioner stated that she did not call before because she had neither money for a telephone call nor a cell phone.

Following discussions with her supervisor and the head of the Agency over the next several days, the petitioner was terminated on February 9, 1998. She was told that it was for failing to attend the group session and failing to report her absence to her supervisor.

The petitioner appealed the termination pursuant to State Personnel & Pensions Article, § 11–110.[3] At the hearing before the Administrative Law Judge, she complained that the respondent had failed to follow the procedure for "taking ... disciplinary action related to employee misconduct ..." prescribed by § 11–106. The respondent conceded the point, but it argued that the section was inapplicable to the termination of a probationary employee. The respondent submitted that such terminations are not firings for "misconduct." The Administrative Law Judge agreed and, subsequently affirmed the decision to terminate the petitioner's employment. The petitioner then filed a petition for judicial review in the Circuit Court for Worcester County. That court also affirmed the termination.

---

**3.** State Personnel & Pension Article, § 11–110, as pertinent, provides:
"(a) Procedure.—
"(1) Within 10 days after receiving a decision under § 11–109 of this subtitle, an employee or an employee's representative may appeal the decision in writing to the Secretary.
"(2) An appeal shall state, to the extent possible, the issues of fact and law that are the basis for the appeal.
"(b) Action required by Secretary after receiving appeal.—Within 30 days after receiving an appeal, the Secretary or designee shall:
"(1) (i) mediate a settlement between the employee and the unit; or
"(ii) refer the appeal to the Office of Administrative Hearings; and
"(2) advise the employee in writing of the Secretary's action."

The petitioner noted an appeal to the Court of Special Appeals. That court likewise affirmed, as we have seen. *Smack, supra.* 134 Md.App. at 417, 759 A.2d at 1212. It reasoned that resolution of the issue of the petitioner's termination is controlled by § 11–303, *id.* at 419, 759 A.2d at 1213, and not by § 11–106, as the petitioner maintains.[4]

Resolution of the issue this case presents is a matter of statutory construction, the canons of which are well settled and have been oft repeated. The predominant goal of statutory construction "is to ascertain and implement, to the extent possible, the legislative intent." *Witte v. Azarian,* 369 Md. 518, 525, 801 A.2d 160, 165 (2002). *See Toler v. Motor Vehicle Administration,* 373 Md. 214, 220, 817 A.2d 229, 233 (2003); *Dyer v. Otis Warren Real Estate,* 371 Md. 576, 580–581, 810 A.2d 938, 941 (2002) ("The goal with which we approach the interpretation of a statute is to determine the intention of the Legislature in enacting it."). We begin the interpretive analysis with the words of the statute and, when they are clear and

---

4. The intermediate appellate court seemed to suggest another reason for concluding that the failure to comply with § 11–106 was of no moment. Its opinion can be read to state that the petitioner was not terminated for "misconduct, that the respondent merely gave a reason for the termination. Specifically, rejecting the argument that "even if a probationary employee's employment could be terminated at the discretion of the employer, nevertheless, § 11–106 would be applicable in this case because [the petitioner] in fact treated this as a misconduct case," the court opined:

"The statute does not define misconduct, but it is clearly a concept distinct from lack of proficiency in employment, although the two could overlap. Appellee did not use the label or in any way assert 'misconduct'; it simply gave a reason for the termination of appellant's employment, a reason consistent with lack of proficiency. It is immaterial whether the same conduct constitutes 'misconduct' within § 11–106. We see no statutory prohibition against giving a reason for termination even if the right to terminate is discretionary. On the other hand, if appellee had chosen to comply with the procedures in § 11–106, even though not required to do so, it would not have violated the statute. The bottom line is that appellee did not comply with the procedures in § 11–106, and in our view of the case, it was not required to do so."

*Smack v. Dept. of Health and Mental Hygiene,* 134 Md.App. 412, 419, n. 1, 759 A.2d 1209, 1213 n. 1 (2000).

unambiguous, there is no need to search further. *Medex v. McCabe,* 372 Md. 28, 38, 811 A.2d 297, 303 (2002); *Whiting–Turner Contracting Co. v. Fitzpatrick,* 366 Md. 295, 301, 783 A.2d 667, 670 (2001); *Harris v. State,* 353 Md. 596, 606, 728 A.2d 180, 184 (1999); *Degren v. State,* 352 Md. 400, 417, 722 A.2d 887, 895 (1999). "[W]e look first to the words of the statute, on the tacit theory that the Legislature is presumed to have meant what it said and said what it meant." *Witte,* 369 Md. at 525, 801 A.2d at 165. In that regard, the statute must be given a reasonable interpretation, "not one that is illogical or incompatible with common sense." *Whiting–Turner,* 366 Md. at 302, 783 A.2d at 671; *State v. Brantner,* 360 Md. 314, 322, 758 A.2d 84, 88–89 (2000). Moreover, statutes are to be interpreted so that no portion is rendered superfluous or nugatory. *See Taylor,* 365 Md. at 181, 776 A.2d at 654; *Blondell v. Baltimore City Police Dep't,* 341 Md. 680, 691, 672 A.2d 639, 644–45 (1996). Words may not be added to, or removed from, an unambiguous statute in order to give it a meaning not reflected by the words the Legislature chose to use, *Medex,* 372 Md. at 38, 811 A.2d at 303, "[n]or [may we] engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning." *Taylor v. Nations-Bank,* 365 Md. 166, 181, 776 A.2d 645, 654 (2001); *Mid–Atlantic Power Supply Ass'n v. Public Serv. Comm'n,* 361 Md. 196, 204, 760 A.2d 1087, 1091 (2000).

When the statute is ambiguous—the words do not clearly disclose the legislative intention or, while clear and unambiguous viewed in isolation, the terms are ambiguous when it is part of a larger statutory scheme, *Mayor & City Council of Baltimore v. Chase,* 360 Md. 121, 130, 756 A.2d 987, 992 (2000), we look for legislative intent in other indicia, including the history of the legislation or other sources extraneous to the statute itself, *see Medex,* 372 Md. at 38, 811 A.2d at 303; *Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590, 594 (1992), as well "as the structure of the statute, how it relates to other laws . . . its general purpose, and the 'relative rationality and legal effect of various competing constructions.'"

*Toler,* 373 Md. at 220, 817 A.2d at 233, quoting *Witte,* 369 at 525–26, 801 A.2d at 165. **We pointed out in *Witte* that** "[o]ne aspect of examining these indicia is the presumption, which itself is a rule of construction, that the Legislature 'intends its enactments to operate together as a consistent and harmonious body of law,' *State v. Ghajari,* 346 Md. 101, 115, 695 A.2d 143, 149 (1997) (quoting *State v. Harris,* 327 Md. 32, 39, 607 A.2d 552, 555 (1992)), such that no part of the statute is rendered meaningless or nugatory. *Gillespie v. State,* 370 Md. 219, 222, 804 A.2d 426, 428 (2002); *Montgomery County v. Buckman,* 333 Md. 516, 523–24, 636 A.2d 448, 452 (1994)."

*Id.* In that regard, where the statute to be construed is a part of an entire statutory scheme, construction of the provisions of the scheme must be done in the context of that scheme. *Whiting–Turner,* 366 Md. at 302–303, 783 A.2d at 671; *Blondell,* 341 Md. at 691, 672 A.2d at 645. When, in that context, two statutes conflict and one is general and the other specific, "the statutes may be harmonized by viewing the more specific statute as an exception to the more general one." *Government Employees Ins. Co. v. Insurance Comm'r,* 332 Md. 124, 133, 630 A.2d 713, 718 (1993). *See State v. Kennedy,* 320 Md. 749, 755, 580 A.2d 193, 196 (1990); *Kee v. State Hwy. Admin.,* 313 Md. 445, 458, 545 A.2d 1312, 1319 (1988), *Prince George's County v. Fitzhugh,* 308 Md. 384, 390 n. 4, 519 A.2d 1285, 1288 n. 4 (1987); *Farmers & Merchants Nat'l Bank v. Schlossberg,* 306 Md. 48, 63, 507 A.2d 172, 180 (1986); *Lumbermen's Mutual Casualty v. Ins. Comm'r,* 302 Md. 248, 268–69, 487 A.2d 271, 281–82 (1985); *DeJarnette v. Federal Kemper Ins. Co.,* 299 Md. 708, 717–18, 475 A.2d 454, 459 (1984); *A.S. Abell Pub. Co. v. Mezzanote,* 297 Md. 26, 40–41, 464 A.2d 1068, 1076 (1983); *Employ. Sec. Adm. v. Browning–Ferris,* 292 Md. 515, 526, 438 A.2d 1356, 1363 (1982).

The provisions of Maryland law governing probationary employees are a part of a comprehensive statutory scheme. *See WCI v. Geiger,* 371 Md. 125, 807 A.2d 32 (2002). That scheme is embodied in the State Personnel Management System Reform Act of 1996, *see* 1996 Md. Laws, ch. 347, the

product of the deliberations of the Governor's Task Force to Reform the State Personnel Management System, which, by Executive Order No. 01.01.1995.15, dated June 9, 1995, was established to address the need for "a personnel management system that is more flexible, decentralizes personnel management functions, simplifies and streamlines personnel procedures and provides for the consistent application of personnel policies throughout a diverse State government." Its charge, more specifically, was to conduct a "comprehensive review of the Maryland State Personnel Management System contained in Division I of the State Personnel and Pensions Article to determine necessary and appropriate revisions to that law." *WCI*, 371 Md. at 145–146, 807 A.2d at 45.

The requisites of, and for, employment in the State Personnel Management System are treated in Title 7. That Title "applies to all employees in the State Personnel Management System," § 7–101(a), except temporary employees. § 7–101(b). Probationary employees are the subject of Subtitle 4. Its provisions make clear that employees in the skilled and professional service, § 7–401(a), must serve a probationary period, upon initial appointment, following a competitive promotion and, under some circumstances, *see* § 7–402(b), following a reinstatement, § 7–402(a), but that employees in the management service or who are special appointments, whatever the service to which appointed, do not. § 7–401(b). The probationary period, which may be extended, *see* § 7–403,[5] is

---

**5.** Section 7–403 provides:

"(a) Grounds.—Subject to subsection (b) of this section and at the sole discretion of the employee's appointing authority, an employee's probationary period may be extended if:

"(1) the appointing authority decides that additional time is necessary to allow the employee to demonstrate proficiency in the performance of the employee's assigned duties and responsibilities;

"(2) in the appointing authority's judgment, the period of the employee's absence on approved leave is sufficient to prevent the appointing authority from making a reasonable decision regarding the proficiency of the employee's performance; or

"(3) the employee requests to extend the probationary period.

"(b) Length of extension.—

six months, § 7–402(a), and is concluded when the employee "demonstrate[s] proficiency in the assigned duties and responsibilities of the position to which the employee is appointed." § 7–402(c). Responsibility for orientation and evaluation, including holding conferences with the employees, is placed on the appointing authority and the supervisor, § 7–404, with, given the goal of the probationary period—to allow an opportunity for gaining proficiency in the position—, the emphasis being on timely assessment of the employee's work and progress and providing the employee with timely feedback. Section 7–404 provides:

"(a) Duties of appointing authority and supervisor generally.—Each appointing authority and, where applicable, supervisor has the responsibility of properly explaining the duties and responsibilities of an employee's position to the employee, providing the employee with a written position description and otherwise orienting the employee to the operations of the employee's unit.

"(b) Conferences with employee.—Periodically during the probationary period, an appointing authority or an employee's supervisor, as appropriate, shall confer with the employee about the employee's performance and improvements in that performance that are necessary to satisfactorily complete probation.

"(c) Evaluations.—

"(1) An appointing authority shall ensure that at the end of an employee's first 90 days of probation the employee receives a written evaluation of the employee's performance and any recommendations for improvement.

"(2) If the appointing authority extends an employee's probationary period, the appointing authority shall ensure that the employee receives additional written evaluations:

---

"(1) Except as provided in paragraph (2) of this subsection, an employee's probationary period may be extended under subsection (a) of this section up to one additional 6–month period.

"(2) For an employee appointed to a skilled service position below grade 7, an employee's probationary period may be extended under subsection (a) of this section up to one additional 3–month period."

"(i) at the end of the employee's initial probationary period; and

"(ii) at the mid-point of the extension period."

The question of how probationary employees are to be terminated or disciplined is the subject of § 7–405, captioned "Disciplinary actions." It instructs:

"An appointing authority may take disciplinary action against or terminate the employment of a probationary employee in accordance with Title 11 of this article."

Title 11 covers "Disciplinary Actions, Layoffs, and Employment Terminations in State Personnel Management System." Subtitle 1 applies to "Disciplinary actions" and, like Subtitle 4 of Title 7, extends to all employees in the executive branch, except temporary employees. § 11–102. Thus, the provisions in this Subtitle, including § 11–106, would appear to be applicable to probationary employees. Subtitle 3 narrows the focus, governing "Employment separations and terminations." Sections 11–303 and 11–304 address specifically probationary employees, their termination and demotion and removal, respectively.

Therefore, there are at least three provisions in Title 11 that apply to the discipline and termination of probationary employees. Two of them may apply to the termination of a probationary employee's employment; one definitely applies and the other only arguably may apply.

The first, on which the petitioner relies, is, as we have seen, § 11–106, "Duty of the appointing authority prior to imposing sanctions." *See note* 1. That section, as we pointed out in *Geiger*, 371 Md. at 143, 807 A.2d at 43, prescribes the prerequisites that must be met before the appointing authority may impose disciplinary action for employee misconduct. Specifically, we held in that case, *see id.*, the appointing authority has thirty (30) days from when it "acquires knowledge of the misconduct for which the disciplinary action is imposed," to investigate the alleged misconduct, meet with the accused employee, consider mitigating circumstances, decide on the discipline to be imposed and give the accused employee writ-

ten notice of the disciplinary action and of his or her appeal rights. § 11–106(a). The employee in Geiger was not a probationary employee and we have not construed § 11–106 in that context.

As we have previously pointed out, *see note* 1, COMAR 17.04.05.04D, the regulation implementing § 11–106, is worded almost identically, adding only that which almost necessarily is implicit, that the appointing authority shall "[n]otify the employee of the misconduct and provide an explanation of the employer's evidence." Another regulation, COMAR 17.04.03.17, deals with probation and presumably was promulgated to implement the provisions that comprise Subtitle 4 of Title 7 of the State Personnel and Pensions Article. As pertinent to the issue sub judice, it provides:

"F. Discipline of Probationary Employees.

"(1) Initial appointment.

\* \* \* \* \* \*

"(c) The provisions of State Personnel and Pensions Article, § 11–106, Annotated Code of Maryland, control the discipline of a probationary employee for misconduct."

The second provision, § 11–303, clearly applies to a probationary employee. Indeed, located in Subtitle 3, Employment Separations and Terminations, of Title 11, it is captioned, "Termination of probationary employees." Section 11–303 provides:

"(a) Authorized.—An appointing authority may terminate the employment of a probationary employee.

"(b) Notice.—Before terminating an employee who is on probation, the appointing authority shall give the employee a notice of termination at least 10 days before the effective date of the termination.

"(c) Suspension during interim.—An appointing authority may suspend a probationary employee with pay between the date of the notice and the effective date of the termination.

"(d) Appeal limited.—A probationary employee may appeal a termination under this section only on the grounds that the termination is illegal or unconstitutional."

Section 11–104 sets out the disciplinary actions the appointing authority is permitted to take. One such action is the termination of the employee's employment, with or without prejudice.[6] Relying on this section, the petitioner notes that termination of employment is a disciplinary action. She argues, therefore, that, as § 11–106 governs disciplinary action against State employees who engage in misconduct, that section applies to the termination of her probationary employment in this case, there being no exception for probationary employment stated in either the statute or the regulation. The petitioner submits:

"There is neither illogic nor inconsistency in empowering an employer to fire employees without stating a reason, on the one hand, while requiring the same employer to observe certain precautions before stigmatizing an employee for 'misconduct' on the other. The legislature no doubt had its reasons in adopting such a policy."

---

**6.** Section 11–104(6) provides:

"An appointing authority may take the following disciplinary actions against any employee:

\* \* \* \* \* \*

"(6) with prior approval of the head of the principal unit:

"(i) terminate the employee's employment, without prejudice; or

"(ii) if the appointing authority finds that the employee's actions are egregious to the extent that the employee does not merit employment in any capacity with the State, terminate the employee's employment, with prejudice."

Prior to 1999, § 11–104 consisted of 7 paragraphs, including former paragraph (3):

"(3) direct up to 3 work days of emergency suspension of the employee, with pay, to immediately remove the employee from the workplace when the appointing authority believes that the employee:

"(i) poses a threat to self, another individual, or State property, or

"(ii) is incapable of properly performing the employee's duties because of extraordinary circumstances."

By 1999 Md. Laws, ch. 207, that paragraph was deleted and the other provisions renumbered.

Stated differently, she draws a distinction between "management's discretion to fire an employee without giving a reason" and imposing on management certain procedural obligations prerequisite to taking disciplinary action when "management does give a reason and the reason is 'misconduct.'" The petitioner also finds persuasive that the regulations implementing the provisions of Subtitle 4 of Title 7 contemplate that § 11–106 control the discipline of probationary employees for misconduct.

We reject the petitioner's argument. Section 11–303 is clear and unambiguous in its application to the termination of probationary employees. Subsection (a) states unequivocally, and without limitation or exception, that the appointing authority may terminate a probationary employee. And when this provision is read in conjunction with subsection (d), prescribing the limited grounds for appeal of the termination decision, it is clear that the termination may be for any reason that is not illegal or unconstitutional. Moreover, § 11–303 contains its own notice provision, requiring the giving of 10 days notice prior to the effective date of the termination. § 11–303(b). The statute does not, and there is no need to, refer to any other statute with regard to procedural requirements. That § 11–303 is wholly self contained is buttressed by its having, in addition, its own separate appeal provision, subsection (d), and by the fact that subsection (c) permits the probationary employee to be suspended, with pay, between the time of the giving of the notice of termination and the actual termination itself.

■■■ To be sure, § 11–106 does apply to disciplinary actions against probationary employees and, as we have seen, termination is a disciplinary action. On the other hand, it is undisputed that § 11–303 does as well. This being the case, the statutes would appear to be irreconcilably in conflict. Section 11–303 is more narrowly focused, however, than § 11–106, referring only to one form of disciplinary action, termination. Thus, they can be reconciled by treating § 11–303, the more specific of the two, as an exception to § 11–106, the more general. Of course, if there were no § 11–303, § 11–106

undoubtedly would apply to the case *sub judice.* Where, however, as here, there is a provision that specifically, and without any doubt, addresses the termination, as opposed to the discipline generally, of probationary employees, that provision must control over a provision that applies, but only generally, as § 11–106 does.

The pronouncement in COMAR 17.04.03.17 F(1)(c) does not change either the analysis or the result. This is true notwithstanding the great deference to which the interpretation given a statute by the agency charged with its administration is entitled. *See Board of Physician Quality Assurance v. Banks,* 354 Md. 59,69, 729 A.2d 376, 381 (1999); *Baltimore Gas & Elec. Co. v. Public Serv. Comm'n,* 305 Md. 145, 161–62, 501 A.2d 1307, 1315 (1986).[7] There is, in reality, no contradiction or inconsistency between COMAR 17.04.03.17 F and our holding that § 11–303, rather than § 11–106, applies to probationary terminations. A termination is but one form of disciplinary action. As § 11–104 makes clear, sanctions and discipline short of dismissal or termination, i.e. "written reprimand," forfeiture of annual leave, suspension without pay, denial of annual pay increases, demotion, qualify as, and are,

---

7. *In Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 69, 729 A.2d 376, 381 (1999), we pointed out:

"Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. *Lussier v. Md. Racing Commission,* 343 Md. 681, 696–697, 684 A.2d 804, 811–812 (1996), and cases there cited; *McCullough v. Wittner,* 314 Md. 602, 612, 552 A.2d 881, 886 (1989) ('The interpretation of a statute by those officials charged with administering the statute is ... entitled to weight').2 Furthermore, the expertise of the agency in its own field should be respected. *Fogle v. H & G Restaurant,* 337 Md. 441, 455, 654 A.2d 449, 456 (1995); *Christ v. Department of Natural Resources,* 335 Md. 427, 445, 644 A.2d 34, 42 (1994) (legislative delegations of authority to administrative agencies will often include the authority to make 'significant discretionary policy determinations'); *Bd. of Ed. For Dorchester Co. v. Hubbard,* 305 Md. 774, 792, 506 A.2d 625, 634 (1986) ('application of the State Board of Education's expertise would clearly be desirable before a court attempts to resolve the' legal issues)."

disciplinary actions. This was certainly recognized by the General Assembly when it enacted § 11–405, making disciplinary actions subject to Title 11; rather than refer only to "disciplinary actions" generally, it chose to draw a distinction between "disciplinary action" and "termination." Thus, the General Assembly specifically permitted an appointing authority "to take disciplinary action against" a probationary employee or to "terminate" that employee, both in accordance with Title 11. That § 11–303 alone applies to the termination of that employee does not deprive § 11–106 of meaning or render the regulation illogical or inconsistent. Indeed, the regulation is totally consistent, as paragraph F(1)(e) of COMAR 17.04.03.17 makes clear. It provides:

"(e) An appointing authority who terminates an employee under this subsection shall do so in accordance with State Personnel and Pensions Article, § 11–303, Annotated Code of Maryland. The appointing authority's notice to the employee shall be in writing with a copy to the Secretary. The appointing authority shall provide notice at least 10 days before the effective date of the termination. The notice shall state the reasons for the termination, the effective date, and the appropriate appeal route. If the termination is for a reason specified in State Personnel and Pensions Article, § 11–105,[8] Annotated Code of Maryland, the ap-

---

**8.** Section 11–105 sets out the reasons for the automatic termination of State employment. It provides:

"The following actions are causes for automatic termination of employment:
"(1) intentional conduct, without justification, that:
"(i) seriously injures another person;
"(ii) causes substantial damage to property; or
"(iii) seriously threatens the safety of the workplace;
"(2) theft of State property of a value greater than $300;
"(3) illegal sale, use, or possession of drugs on the job;
"(4) conviction of a controlled dangerous substance offense by an employee in a designated sensitive classification;
"(5) conviction of a felony;
"(6) accepting for personal use any fee, gift, or other valuable thing in connection with or during the course of State employment if given to the employee by any person with the hope or expectation of

pointing authority may disregard the requirement for 10 days notice and immediately submit a written termination notice to the Secretary."

Section 11–106, consequently, remains the applicable provision, and must be applied, whenever a probationary employee has disciplinary action taken against him or her that is short of termination. Contrary to the protestations of the petitioner to the contrary, albeit in a broader context, there is logic and symmetry in such a dichotomy.[9]

JUDGMENT AFFIRMED, WITH COSTS.

receiving a favor or better treatment than that accorded to other persons;

"(7) (i) violation of the Fair Election Practices Act; or

"(ii) using, threatening, or attempting to use political influence or the influence of any State employee or officer in securing promotion, transfer, leave of absence, or increased pay; and

"(8) wantonly careless conduct or unwarrantable excessive force in the treatment or care of an individual who is a client, patient, prisoner, or any other individual who is in the care or custody of this State."

9. The petitioner posed a second question, whether the respondent correctly asserted before the Administrative Law Judge that non-compliance with § 11–106 in this case was excused because the grounds on which the respondent terminated the petitioner did not constitute misconduct. Given our resolution of the petitioner's first question, we need not and, therefore, do not, reach that issue.