43 A.3d 338

Vanessa **FISHER**

v.

**EASTERN CORRECTIONAL INSTITUTION, Department**
**of Public Safety & Correctional Services.**

**No. 90, Sept. Term, 2011.**

Court of Appeals of Maryland.

April 26, 2012.

700

Robin R. Cockey (Cockey, Brennan & Maloney, P.C., Salisbury, MD), on brief, for Petitioner.

Lisa O. Arnquist, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, ADKINS, BARBERA and McDONALD, JJ.

BARBERA, J.

We are called upon in this case to interpret several provisions of the State Personnel Management System, codified in Title 11, Subtitle 1 of the Maryland Code (1993, 2009 Repl.

Vol.), State Personnel and Pensions Article.[1] In particular, we must determine the interplay of three provisions, §§ 11–108, 11–109, and 11–110.[2] Section 11–109(c)(1) provides that, within 15 days of receiving discipline, "[a]n employee or an employee's representative may file with the head of the principal unit a written appeal of a disciplinary action that ... the employee believes would warrant rescinding the disciplinary action." Section 11–109(e)(2) in turn provides that, "[w]ithin

---

1.  Unless otherwise noted, all statutory references herein are to the State Personnel and Pensions Article.

2.  Section 11–108 provides, in pertinent part:
    (b) *Effect of failure to appeal or failure to decide an appeal.*—(1) If an employee fails to appeal a decision in accordance with this subtitle, the employee is considered to have accepted the decision.
    (2) A failure to decide an appeal in accordance with this subtitle is considered a denial from which an appeal may be made.
    \*      \*      \*
    (d) *Resolution of appeal encouraged.*—Each party shall make every effort to resolve an appeal at the lowest level possible.
    Section 11–109 provides, in pertinent part:
    (a) *Scope of section.*—(1) Except as provided in paragraph (2) of this subsection, this section applies only to employees in the skilled service or the professional service.
    (2) This section does not apply to an employee under a special appointment described in § 6–405 of this article.
    \*      \*      \*
    (c) *Appeal to head of principal unit—Procedure.*—(1) An employee or an employee's representative may file with the head of the principal unit a written appeal of a disciplinary action that states, to the extent possible, the issues of fact and law that the employee believes would warrant rescinding the disciplinary action.
    (2) An appeal under this subtitle must be filed within 15 days after the employee receives notice of the appointing authority's action.
    \*      \*      \*
    (e) *Appeal to head of principal unit—Disposition.*—(1) The head of the principal unit may:
    (i) uphold the disciplinary action; or
    (ii) rescind or modify the disciplinary action taken and restore to the employee any lost time, compensation, status, or benefits.
    (2) Within 15 days after receiving an appeal, the head of the principal unit shall issue to the employee a written decision that addresses each point raised in the appeal.
    Section 11–110 provides, in pertinent part:
    (a) *Procedure.*—(1) Within 10 days after receiving a decision under § 11–109 of this subtitle, an employee or an employee's representative may appeal the decision in writing to the Secretary.

15 days after receiving an appeal, the head of the principal unit shall issue to the employee a written decision that addresses each point raised in the appeal." Section 11–108(b)(2), though, states that "[a] failure to decide an appeal in accordance with this subtitle is considered a denial from which an appeal may be made." Section 11–110(a)(1) provides that, "[w]ithin 10 days after receiving a decision under § 11–109 of this subtitle, an employee or an employee's representative may appeal the decision in writing to the Secretary [of the Department of Budget and Management (DBM) ]."

The case at bar requires us to ascertain how these provisions are to be implemented when, as here, a terminated employee notes a timely appeal to the head of the principal unit and the head of the principal unit fails within fifteen days thereafter to issue a written decision. Specifically, we must decide whether an employee in that circumstance must assume at the end of the fifteen-day period that the appeal has been denied and take any further appeal within ten days thereafter. The Administrative Law Judge (ALJ) read the pertinent provisions as requiring any further appeal to be taken within 10 days of a deemed denial. The Circuit Court for Somerset County and Court of Special Appeals agreed. So do we.

## I.

In November 2008, Vanessa Fisher, Petitioner, was in the employ of the Eastern Correctional Institution, Respondent. Petitioner was notified in December 2008 that her employment was terminated.[3] Petitioner submitted a timely written appeal of her termination to the head of her principal unit, Gary D. Maynard, Secretary of the Department of Public Safety and Correctional Services (DPSCS).[4] Petitioner's filing consisted

---

3.  The question we decide in this case does not require a recitation of the facts leading to Petitioner's termination.

4.  Section 11–109, with certain exceptions not here relevant, "applies only to employees in the skilled service or the professional service."

of a letter sent by Petitioner's counsel to the Secretary that briefly described the factual circumstances of the incident leading to termination of Petitioner's employment and summarily outlined the argument against termination. After requesting relief in the form of reinstatement and back pay, counsel's letter concluded: "I await your response."

On February 5, 2009, having received no response, Petitioner, through counsel, sent a second letter to Secretary Maynard inquiring into "the status of this proceeding." Petitioner's counsel wrote again on July 29, 2009, noting Secretary Maynard's lack of response and requesting a decision at the Secretary's "earliest convenience." Counsel added: "If I have not received your decision by August 7, 2009, I shall assume you have decided to uphold [Petitioner's] termination, albeit without written opinion, and file an appeal on her behalf to the Office of Administrative Hearings."

On August 20, 2009, Petitioner, through counsel, sent a letter to the Secretary of DBM. In it, Petitioner stated that she had assumed from Secretary Maynard's silence that "her appeal has been denied pursuant to ... § 11–108(b)(2)," and Petitioner "now seeks to have this matter appealed to the Secretary of [DBM]." After attempting to resolve the matter through the settlement conference process, the Secretary of DBM forwarded the appeal to the Office of Administrative Hearings.

Respondent filed a motion to dismiss, or, in the alternative, a motion for summary decision. Respondent asserted that the appeal to DBM was untimely because Petitioner did not file it "[w]ithin 10 days after receiving a decision" from Secretary

---

§ 11–109(a)(1). There is no dispute that this provision applies to Petitioner. There is also no dispute that Petitioner, upon learning of her termination, complied with subsection (c)(1) and (2) by taking an appeal to the "head of the principal unit," Secretary Maynard, within 15 days of Respondent's decision to terminate her. See § 11–109(c)(1) ("An employee or an employee's representative may file with the head of the principal unit a written appeal of a disciplinary action ..."); § 11–109(c)(2) ("An appeal under this subtitle must be filed within 15 days after the employee receives notice of the appointing authority's action.").

Maynard, as required by § 11–110(a)(1). Citing the language of § 11–108(b)(2) that "[a] failure to decide an appeal in accordance with this subtitle is considered a denial from which an appeal may be made," Respondent argued that Secretary Maynard's failure to issue a decision within 15 days was a denial of Petitioner's appeal and, because Petitioner transmitted her appeal approximately 230 days after it was "deemed denied" by operation of law, her appeal was untimely under § 11–110(a)'s 10–day limitation, necessitating dismissal.

Petitioner offered several arguments in response. She first argued that § 11–109(e)(2) mandates that the head of a principal unit "shall" issue a decision, making issuance of a decision a mandatory duty. In Petitioner's view, Secretary Maynard's fulfillment of that mandatory decision-making duty was a prerequisite to her taking a further appeal to the Secretary of DBM. Petitioner relied for that argument on § 11–110(a)(1), which provides that an appeal may be filed only "[w]ithin 10 days *after receiving a decision* under § 11–109 of this subtitle." (Emphasis added.) Petitioner further argued that her appeal to the Secretary of DBM was timely because, for eight months after taking her appeal to Secretary Maynard, she had corresponded repeatedly with him to resolve the appeal, in accordance with the declaration in § 11–108(d) that each party "shall make every effort to resolve an appeal at the lowest level possible." Petitioner maintained that only when she deemed her efforts at resolution to have failed (having received no response from Secretary Maynard for 230 days) did she take a further appeal to the Secretary of DBM.

The ALJ disagreed with Petitioner's interpretation of the statutory provisions. The ALJ noted in the order dismissing the appeal that, under the plain language of § 11–108(b)(2), "[t]he consequence of the head of the principal department's failure to obey the 'shall' in [§ 11–109(e)(2)] . . . is that an employee can proceed with the appeal process without having to wait for a decision that might never come." The ALJ further noted that Petitioner spent a fruitless eight months attempting to resolve her appeal at Secretary Maynard's level because "any decision [by Secretary Maynard] rendered after

the fifteen-day period [of § 11–109(e)(2) ] would have been a legal nullity." The ALJ added that, "if it were 'mandatory' for the head of the principal department to actually render a decision, the language of [§ 11–108(b)(2) ] would be rendered superfluous."

Petitioner filed in the Circuit Court for Somerset County a Petition for Judicial Review. That court affirmed the decision of the ALJ. The Court of Special Appeals later affirmed the judgment of the Circuit Court, holding in an unreported opinion that the court did not err in affirming the ALJ's dismissal of the appeal.

We issued a writ of certiorari, *Fisher v. Eastern Correctional Institution,* 423 Md. 450, 31 A.3d 919 (2011), to address the following question presented by Petitioner:

Whether the lower court correctly dismissed [Petitioner's] appeal on the grounds that, by allowing the Secretary of her agency additional time to meet his statutory responsibility to decide her appeal, she inadvertently rendered her appeal untimely?

## II.

■■■■ At base, this case is one of statutory construction, the rules for which are well known. We have said time and again that "the paramount object of statutory construction is the ascertainment and effectuation of the real intention of the Legislature." *In re Gloria H.,* 410 Md. 562, 579–80, 979 A.2d 710, 720 (2009) (quoting *W. Correctional Inst. v. Geiger,* 371 Md. 125, 140, 807 A.2d 32, 41 (2002)). The process of statutory interpretation begins with the plain language of the statute, where we "read[ ] the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Moore v. State,* 424 Md. 118, 127, 34 A.3d 513, 518 (2011) (quoting *Ray v. State,* 410 Md. 384, 404, 978 A.2d 736, 747–48 (2009)). If the plain language of the statute is clear and unambiguous, the process ends and "no further sleuthing of statutory interpretation is

needed." *Breslin v. Powell,* 421 Md. 266, 287, 26 A.3d 878, 891 (2011).

■■■■■ When the words of the statute are ambiguous, we resolve the ambiguity using a wider range of interpretive aids, including legislative history, prior case law, statutory purpose and statutory structure. *Briggs v. State,* 413 Md. 265, 275, 992 A.2d 433, 439 (2010) (quoting *Rosemann v. Salsbury, Clements, Bekman, Marder & Adkins, LLC,* 412 Md. 308, 315, 987 A.2d 48, 52 (2010)). We may also consider the "relative rationality and legal effect of various competing constructions." *Gardner v. State,* 420 Md. 1, 9, 20 A.3d 801, 806 (2011) (quoting *State v. Johnson,* 415 Md. 413, 422, 2 A.3d 368, 373 (2010)). Finally, we are guided by the presumption that "the Legislature intends its enactments to operate together as a consistent and harmonious body of law, such that no part of the statute is rendered meaningless or nugatory." *Smack v. Dep't of Health and Mental Hygiene,* 378 Md. 298, 306, 835 A.2d 1175, 1179 (2003) (quoting *Witte v. Azarian,* 369 Md. 518, 525, 801 A.2d 160, 165 (2002) (quotation marks and citation omitted)).

■■■■■ The ambiguity that prompts our use of these aids can arise when the words of the section at issue themselves are "subject to more than one reasonable interpretation," *Bd. of Cnty. Comm'rs v. Marcas, L.L.C.,* 415 Md. 676, 685, 4 A.3d 946, 951 (2010) (quoting *Lockshin v. Semsker,* 412 Md. 257, 276, 987 A.2d 18, 29 (2010)), and therefore "do not clearly disclose the legislative intention," *Smack,* 378 Md. at 305, 835 A.2d at 1179. Ambiguity may also arise when "the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme." *Lockshin,* 412 Md. at 276, 987 A.2d at 29. In every case, "the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." *Lark v. Montgomery Hospice, Inc.,* 414 Md. 215, 228, 994 A.2d 968, 976 (2010) (quoting *Lockshin,* 412 Md. at 276, 987 A.2d at 29).

The three sections at issue in this case are §§ 11–108, 11–109, and 11–110.  The parties do not disagree about the meaning of § 11–110; indeed, that section is plain when read both in isolation and together with other provisions of the subtitle.  The parties sharply diverge, however, in their respective interpretation and application of §§ 11–108(b)(2) and 11–109(e)(2).  Petitioner interprets those two sections together to mean that the 10–day period set forth in § 11–110(a) within which a disciplined employee must act (if she desires to take a further appeal to the Secretary) is not triggered unless and until the head of the relevant principal unit issues a written decision.  Petitioner's interpretation of the statutory scheme rests on the apparent mandate of § 11–109(e)(2) that, "[w]ithin 15 days after receiving an appeal, the head of the principal unit *shall issue* to the employee *a written decision* that addresses each point raised in the appeal."  (Emphasis added.)  Any other interpretation, argues Petitioner, would "shift[ ]" impermissibly "the burden of proceeding with the appeal ... [to the employee]."  Petitioner reads § 11–108(b)(2) as permitting the employee to identify the point at which a failure to decide is a deemed denial:  either at the end of the 15–day period or, presumably, some period of time thereafter determinable by the disciplined employee without any standard.  For that construction of § 11–108(b)(2), Petitioner looks to the words that the "failure to decide ... is considered a denial from which an appeal *may* be made." (Emphasis in Petitioner's Brief.)

In that same vein, Petitioner also argues that the language of § 11–110(a)(1)—"[w]ithin 10 days *after receiving a decision under § 11–109 of this subtitle* "—makes issuance of a written decision a prerequisite to the filing of an appeal with the Secretary of the DBM. (Emphasis in Petitioner's Brief.) Petitioner maintains, moreover, that she was justified in waiting 230 days before taking her appeal to the Secretary of DBM because she was trying, through her counsel's several letters to Secretary Maynard, to "make every effort to resolve an appeal at the lowest level possible," as directed by § 11–108(d).

Respondent interprets quite differently the language of §§ 11–108(b)(2) and 11–109(e)(2). According to Respondent, the plain language of these provisions when read together triggers under all circumstances the § 11–110(a)(1) 10–day period within which the employee seeking further administrative review must act in order to obtain such review. This is so, Respondent argues, regardless of whether the head of the principal unit issues a written decision within the 15–day period prescribed by § 11–109(e)(2), or the failure to do so is deemed a denial by operation of § 11–108(b)(2). Respondent takes issue with Petitioner's interpretation of § 11–108(b)(2). Respondent asserts that this subsection does not grant the employee the discretion to deem as a denial, or not, the failure of the head of the principal unit to issue a written decision, because the language of the subsection mandates that "a failure to decide an appeal in accordance with this subtitle *is considered a denial....* " (Emphasis added.)

■■■ We conclude that Respondent has the better part of the argument. To begin, we accept Petitioner's contention (with which Respondent seems to agree) that § 11–109(e)(2) is cast in facially unambiguous—and seemingly mandatory— terms: "Within 15 days after receiving an appeal, the head of the principal unit *shall issue* to the employee a written decision that addresses each point raised in the appeal." (Emphasis added.) The apparent clarity of that provision, though, dims in light of the equally unambiguous language of § 11–108(b)(2), which expressly allows that a decision may not issue: "A failure to decide an appeal in accordance with this subtitle is considered a denial from which an appeal may be taken." Each of the two provisions, "clear and unambiguous when viewed in isolation, ... become ambiguous when read as part of a larger statutory scheme." *Lockshin,* 412 Md. at 276, 987 A.2d at 29.

The ambiguity is readily resolved by employing the rules of statutory construction. As we undertake that task, we bear in mind the rule that various statutory provisions covering the same subject matter are to be construed, if at all possible, so

that together the sections harmonize with one another and no section is rendered nonsensical or nugatory. *Smack,* 378 Md. at 306, 835 A.2d at 1179. The construction of §§ 11–108(b)(2) and 11–109(e)(2) that best adheres to these rules of interpretation is the one urged by Respondent.

The most commonsensical way to interpret the two seemingly inconsistent provisions is to read § 11–109(e)(2) to mean that, regardless of the reason for a failure of decision within the allotted period of fifteen days—be it error, negligence, or, more likely, a determination by the head of the principal unit not to issue a written decision—the failure of decision is, by operation of § 11–108(b)(2), a denial of the appeal. Any other interpretation, short of one that is strained and, in the end, nonsensical, would render nugatory § 11–108(b)(2).

We reject the construction of § 11–108(b)(2) offered by Petitioner. To repeat, § 11–108(b)(2) reads: "[a] failure to decide . . . is considered a denial from which an appeal may be made." Petitioner, relying on the word "may" at the end of the subsection, reads the entire text of the subsection as permitting the employee to elect when it comes into play. We do not read "may" as Petitioner does. The word "may" does not qualify whether a non-decision is deemed a denial of an appeal. Rather, "may" merely acknowledges that the employee is not obligated to appeal an adverse decision. In fact, the word "may" is found in every provision within Subtitle 1 of Title 11 that addresses the employee's right of appeal. *See* § 11–109(c) ("An employee or employee's representative may file with the head of the principal unit a written appeal of a disciplinary action"); § 11–110(a)(1) ("Within 10 days after receiving a decision under § 11–109 of this subtitle, an employee or an employee's representative may appeal the decision in writing to the Secretary [of DBM]"); § 11–113(b)(1) ("An employee or an employee's representative may file a written appeal of a disciplinary action with the head of the principal unit"). *See also* §§ 12–204(a) & 12–205(a) (using the word "may" in describing the employee's right of appeal under the employee grievance process codified in Title 12 of the State Personnel and Pension Article). It would be unreason-

able to construe the word "may" in both the disciplinary and grievance statutes as vesting the employee with the right to appeal while relieving the employee of the obligation of timely noting the appeal.[5]

Our construction of §§ 11–108(b)(2) and 11–109(e)(2) is supported by the legislative history. Before 1996, the process by which an employee in the classified service could appeal a termination decision was codified at Article 64A, § 33 of the Maryland Code (1957, 1983 Repl.Vol.). Article 64A, § 33 provided that, once cause for discipline was found and written charges were filed with the Secretary of Personnel,[6] those charges "shall within ninety days after filing, be heard, investigated and determined by the Secretary." The Secretary was directed to render his or her decision on the charges within 45 days after a hearing was formally held, or within 45 days after all legal memoranda were filed. Md.Code, art. 64A, § 33. Reaching those statutory benchmarks was difficult because the Secretary could only hear, investigate and determine so many terminations at once. Consequently, according to summary documents attached to the House Bill that repealed and replaced Article 64A, § 33, the single-source decision process resulted in an employee waiting an average of 225 days for an appeal to be resolved. *Summary of Changes attached to H.B. 774*, 1996 Reg. Session (Md. Gen. Assembly 1996).

To alleviate this and other inefficiencies, in June 1995 then-Governor Glendening issued Executive Order 01.01.1995.15, establishing a Task Force to Reform the State Personnel

---

**5.** We also disagree with Petitioner's argument that § 11–108(d), providing that "[e]ach party shall make every effort to resolve an appeal at the lowest level possible," justifies the eight-month delay in filing the appeal. Section 11–108(d) cannot reasonably be read as Petitioner would like. Simply put, § 11–108(d) does not allow employees the discretion to delay a further appeal for as long as they might wish, while corresponding with administrative actors in an attempt to resolve the appeal. The statutory scheme forecloses such protracted conduct by creating an outer limit of time for decision-making and taking an appeal.

**6.** When the Office of the Secretary of Personnel was eliminated, many of its functions were assigned to the Secretary of DBM.

Management System. The Executive Order requested from the Task Force a report and proposed legislation that "creat[ed] ... a modern human resources management system which streamlines and simplifies the State's personnel policies and provides for the consistent application of human resources management principles."

The Task Force provided in January of 1996 its "Report to the Governor" (Report), which proposed, in part, a new, tiered decision-making process for disciplinary appeals that aimed to dispose of appeals in a responsive, flexible and effective manner. The Report's recommendations, including those for restructuring the appeal process, "were subsequently introduced in the General Assembly as the State Personnel Management System Reform Act of 1996.[7]" *Geiger,* 371 Md. at 146, 807 A.2d at 44. "The Reform Act generally reflect[ed] the Task Force recommendations and was passed in substantially the same form as proposed by the Task Force." *Reier v. State Dep't of Assessments and Taxation,* 397 Md. 2, 28, 915 A.2d 970, 985 (2007) (quotation marks and citation omitted). Pertinent to this case, §§ 11–109 and 11–110 were adopted directly from the Report by the Legislature without significant modification. *Compare* The Report, pp. 45–48, *with* §§ 11–109 & 11–110. Section 11–108 was introduced during the legislative process in the Legislature.

The General Assembly's nearly verbatim enactment of the recommendations in the Report reflects the legislature's intent to effectuate the Task Force's original stated goal: "creation of a modern human resources management system which streamlines and simplifies the State's personnel policies and provides for the consistent application of human resources management principles." Executive Order 01.01.1995.15. Our construction of §§ 11–108(b)(2) and 11–109(e)(2) gives effect to that goal. It is significant that the General Assembly included § 11–108(b)(2) as the bill moved through the legislature. The General Assembly's action evidences an apprecia-

---

7. The Act was enacted as 1996 Maryland Laws, ch. 347 § 1.

tion for the notion that the head of a principal unit could not, or even should not, author in every appeal presented to him or her "a written decision that addresses each point raised in the appeal," much less do so within fifteen days of receipt of the appeal. As we have construed it, § 11–108(b)(2) ensures that an employee's appeal of disciplinary action is always ripe for pursuit of further appellate review exactly 15 days after filing. The legislative history also supports our rejection of Petitioner's construction of § 11–108, which would have granted employees an additional, discretionary waiting period before taking a further appeal. Not only would Petitioner's construction have been unworkable, but its effect would have returned the appellate process to its pre–1996 state.

■■■ All that we have discussed leads to but one conclusion, and thus the holding of this case: Regardless of whether the head of the principal unit issues a written decision within fifteen days after receipt of the employee's appeal in accordance with § 11–109(e)(2), or the appeal is denied by operation of § 11–108(b)(2), the employee who desires to take a further appeal must do so within ten days after the earlier of these occurrences, pursuant to § 11–110(a)(1).

### III.

■■■ Before ending, we must briefly address one additional matter. Both Petitioner and Respondent dedicate portions of their briefs to disputing whether Secretary Maynard's failure to issue a written opinion violates the *Accardi*[8] doctrine. The doctrine, as both parties recognize, provides that "an administrative decision is subject to invalidation when the agency's 'failure to exercise its own discretion, [is] contrary to existing valid regulations.'" *Pollock v. Patuxent Inst. Bd. of Review*, 374 Md. 463, 467 n. 1, 823 A.2d 626, 628 n. 1 (2003) (quoting *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268, 74 S.Ct. 499, 98 L.Ed. 681 (1954)). In Supreme Court cases

---

**8.** Referring to *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

subsequent to *Accardi,* the doctrine has been refined to a rule providing that "an administrative agency [must] generally follow its own procedures or regulations." *Id.,* 823 A.2d at 628 n. 1. Petitioner argues that the doctrine applies in the case before us because the agency overtly refused to follow its own regulation when Secretary Maynard failed to issue a decision in accordance with the direction of § 11–109(e)(2).

We decline to resolve the parties' dispute because Petitioner's *Accardi* argument was neither presented in her petition for a writ of certiorari, nor fairly embraced in the question presented in that petition. *See* Md. Rule 8–131(b); *see also Robinson v. Balt. Police Dep't,* 424 Md. 41, 49, 33 A.3d 972, 977 (2011) (declining to decide the petitioner's *Accardi* challenge because the "[p]etitioner did not present the argument in a separate question in his petition for certiorari, and the argument is not embraced by the question he did present"); *Garner v. Archers Glen Partners, Inc.,* 405 Md. 43, 60–61, 949 A.2d 639, 649 (2008) ("[S]ince the time when this Court's jurisdiction became largely dependent upon the issuance of a writ of certiorari, we have consistently held that, in a case decided by an intermediate appellate court, we shall not consider an issue unless it was raised in a certiorari petition, a cross-petition, or the order by this Court granting certiorari.").

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**