*Laura Lynn Hughes v. Stephen Moyer, Secretary of Public Safety and Correctional Services*
No. 21, September Term 2016

**State Personnel Law – Employee Discipline – Administrative Appeals.** Under the State Personnel Law, an employee in the skilled or professional service who has been disciplined may appeal that discipline through an administrative appeal process. That process includes an initial appeal to the head of the employee's agency and, if unsuccessful, a further appeal to the Secretary of Budget and Management for referral to a contested case hearing at the Office of Administrative Hearings. Failure of the agency head to respond to the initial appeal within the statutory time limit is deemed to be a denial of the first-tier appeal that triggers the limited time frame for the employee to invoke the second-tier appeal. The statute requires that the agency send a written notice of disciplinary action that advises the employee of the employee's appeal rights. To comply with the statutory directive, the notice should advise the employee of the possibility of a second-tier appeal and of the significance of an agency's failure to respond to a first-tier appeal within the statutory time limit. Maryland Code, State Personnel & Pensions Article, §11-101 *et seq.*

Circuit Court for Baltimore County
Case No. 03-C-14-013661
Argument: October 7, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 21

September Term, 2016

_____

LAURA LYNN HUGHES

V.

STEPHEN MOYER, SECRETARY OF PUBLIC
SAFETY AND CORRECTIONAL SERVICES

_____

Barbera, C.J.,
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by McDonald, J.

_____

Filed: March 24, 2017

It is often the task of lawyers and judges to parse the meaning of language – in constitutions, statutes, contracts, documentary exhibits, or testimony. Silence may also have legal significance. This case turns on two instances of silence. In one instance, a statute tells us what it means. In the other, we must decide its significance.

This case arises out of the termination of Petitioner Laura Lynn Hughes from her job with the Department of Public Safety and Correctional Services ("DPSCS"). The personnel law governing an employee like Ms. Hughes requires, among other things, that the agency advise a disciplined employee of the employee's appeal rights. That statute allows a disciplined employee to seek to overturn the discipline through a two-tier administrative appeal process with tight timelines. Under the statute, a failure of an agency official to respond to a first-tier appeal by the statutory deadline is deemed to be a denial of that appeal, thereby allowing the employee to move to the next level of appeal, at which there is an opportunity for a hearing. In other words, silence equals denial.

In Ms. Hughes' case, the agency sent her a notice of termination that informed her of the first tier of the administrative appeal process – an appeal to the Respondent Secretary of DPSCS. However, the notice was silent as to the second tier of the process. Nor did the notice inform her that a failure of the Secretary of DPSCS to respond to her first-tier appeal within the time limit would trigger the time for her to invoke the second tier and the opportunity for a hearing.

Ms. Hughes followed the directions for invoking the first tier of the administrative appeal process. The Secretary of DPSCS failed to respond within the statutory time limit, thus denying her first-tier appeal. Apparently unaware that this silent denial triggered the

limited time for her to invoke a second-tier appeal, Ms. Hughes did nothing before the deadline passed. When she belatedly attempted to pursue her administrative appeal and the agency did not respond, she commenced this action in the Circuit Court for Baltimore County.

We hold that, in order to discharge its responsibility to provide a disciplined employee with notice of the employee's administrative appeal rights, an agency cannot remain silent as the second tier appeal, but must advise the employee of the possibility of a second-tier appeal and alert the employee as to the significance of silence in response to a first-tier appeal.

# I

## Background

### A. *Administrative Appeals of Discipline of State Employees*

To place the issues in this case in context, we first describe the key provisions of the statute that governs discipline of certain employees of the executive branch of State Government, and a recent decision of this Court construing that statute.

#### 1. Statutory Provisions

Disciplinary actions concerning employees in the State Personnel Management System are governed by Maryland Code, State Personnel and Pensions Article ("SPP"), §11-101 *et seq.* That statute sets forth the various types of disciplinary action that may be taken against an employee – *e.g.*, written reprimand, forfeiture of leave, suspension, demotion, and termination – and specifies certain types of misconduct that result in

2

automatic termination of employment. SPP §§11-104, 11-105, 11-107. The statute also sets forth procedures and time constraints for agencies to investigate alleged misconduct, impose discipline, and consider administrative appeals of disciplinary action. SPP §§11-106, 11-108 through 11-113.

If an agency decides to impose discipline, the appropriate agency official – the "appointing authority" in the parlance of the statute[1] – is to give the employee "written notice of the disciplinary action . . . and the employee's appeal rights." SPP §11-106(a)(5). With certain exceptions not pertinent here, an employee in the skilled service or professional service[2] who is the subject of disciplinary action may file a written appeal of that action with the "head of the principal unit"[3] of the agency within 15 days after the employee receives notice of the disciplinary action. SPP §11-109(c). The statute provides that, within 15 days after receiving the appeal, the head of the principal unit is to issue a written decision that either upholds, modifies, or rescinds the disciplinary action. SPP §11-

---

[1] The term "appointing authority" is defined as "an individual or a unit of government that has the power to make appointments and terminate employment." SPP §1-101(b).

[2] The State personnel law defines various categories of executive branch employees, including skilled service, professional service, management service, and executive service. *See* SPP §6-301 *et seq.,* §6-401 *et seq.*

[3] The term "principal unit" is defined, in pertinent part, as a "principal department or other principal independent unit of State government." SPP §1-101(k)(1). The principal departments of State government are listed in Maryland Code, State Government Article ("SG"), §8-201(b). That list includes DPSCS.

109(e).  The employee has a further right to appeal that decision to the Secretary of Budget and Management ("Secretary of DBM") if the employee acts within 10 days of receiving the decision of the head of the principal unit.  SPP §11-110.  The Secretary of DBM may in turn refer the matter to the Office of Administrative Hearings ("OAH") for a hearing and final administrative decision.  *Id.*  The statute encourages parties to resolve any appeals "at the lowest level possible."  SPP §11-108(d).  The statute also authorizes the parties to extend or waive time limits by agreement.  SPP §11-108(c).

The statute contains default provisions that specify the consequences if the employee or agency does not act within the specified deadlines or any agreed-upon extension.  An employee who fails to appeal a decision in accordance with the statute is deemed to have accepted it.  SPP §11-108(b)(1).  A failure by an agency to decide an appeal in accordance with the statute is deemed to be a denial from which a further appeal may be made.  SPP §11-108(b)(2).

2.      *Fisher v. Eastern Correctional Institution*

This Court recently discussed the interplay of the statutory provisions concerning administrative appeals of disciplinary actions, including one of the default provisions, in *Fisher v. Eastern Correctional Institution*, 425 Md. 699 (2012).  In that case, an employee of a State prison, who had been terminated as a result of a disciplinary investigation, filed a timely administrative appeal with the head of her principal unit – as in this case, the Secretary of DPSCS.  After approximately nine months had passed without a response from the Secretary of DPSCS, the employee sent a letter to the Secretary of DBM to appeal what

4

she assumed was the denial of her appeal by the Secretary of DPSCS. The Secretary of DBM referred the matter to OAH. The administrative law judge ("ALJ") assigned by OAH granted a motion to dismiss the appeal on the ground that the failure of the Secretary of DPSCS to respond to the appeal within 15 days had triggered the 10-day period for the second-tier administrative appeal to the Secretary of DBM – a period that had long passed by the time the employee had contacted the Secretary of DBM. The ALJ's decision was ultimately affirmed by this Court.

In reaching that decision, the Court noted that the apparently unqualified command set forth in SPP §11-109(e)(2) that the head of the principal unit "shall issue a written decision" on a first-tier administrative appeal was rendered somewhat ambiguous by the default provision of SPP §11-108(b)(2) that makes the failure to do so a denial of the appeal that allows an employee to move on to the next stage of the appeal process. This Court concluded that the best way to read the two provisions together meant that an appeal that remained unanswered after 15 days was a denial of the appeal as of that time. The Court reasoned:

> The most commonsensical way to interpret the two seemingly inconsistent provisions is to read §11-109(e)(2) to mean that, regardless of the reason for a failure of decision within the allotted period of fifteen days – be it error, negligence, or, more likely, a determination by the head of the principal unit not to issue a written decision – the failure of decision is, by operation of §11-108(b)(2), a denial of the appeal. Any other interpretation, short of one that is strained and, in the end, nonsensical, would render nugatory §11-108(b)(2).

425 Md. at 710.

The Court observed that this construction was supported by the statute's legislative history. The disciplinary actions subtitle – subtitle 1 of Title 11 of the State Personnel and Pensions Article – had been enacted by the Legislature in 1996 based on the recommendations of the Task Force to Reform the State Personnel Management System. Chapter 347, Laws of Maryland 1996. Prior to 1996, administrative appeals were decided solely by the Secretary of Personnel[4] under a process with certain timing benchmarks that were difficult to meet, with the result that the average appeal took 225 days to resolve. *Id.* at 711. To "streamline … and simplif[y]" that system, the 1996 amendments substituted a two-tier administrative appeals system that would process appeals more efficiently and effectively with initial consideration at the agency level and with the potential for a further appeal to the Secretary of DBM, where there would be an opportunity for a hearing. The Court noted that SPP §11-108(b)(2) – the deemed denial provision – had been added by the General Assembly to expedite the process to the second tier. The Court stated:

> The General Assembly's action evidences an appreciation for the notion that the head of a principal unit could not, or even should not, author in every appeal presented to him or her "a written decision that addresses each point raised in the appeal," much less do so within fifteen days of receipt of the appeal. As we have construed it, §11-108(b)(2) ensures that an employee's appeal of disciplinary action is always ripe for pursuit of further appellate review exactly 15 days after filing.

---

[4] The position of Secretary of Personnel was eliminated in 1996, and many of the duties associated with that position were re-assigned to the Secretary of DBM. *See* Chapter 349, §3, Laws of Maryland 1996.

*Id*. at 712-13. The Court observed that an interpretation of SPP §11-108(b)(2) that allowed an employee to delay filing a further appeal of a deemed denial of a first-tier appeal would have resulted in the lengthy delays in appeals experienced prior to the 1996 amendments. *Id*.

Based on this reasoning, the Court held that an employee must invoke the second tier of the administrative appeal process within 10 days after the earlier of (1) receipt of an adverse written decision under SPP §11-109(e)(2) or (2) a deemed denial under SPP §11-108(b)(2). *Id*. at 713.

## B. *Ms. Hughes is Disciplined and Appeals*

### 1. Termination of Ms. Hughes

Although the procedural posture of this case at the time it was dismissed in the Circuit Court is somewhat unclear,[5] there does not appear to be any significant dispute as to the facts material to the issues before us. We glean the following basic facts from the pleadings and motions papers.

Ms. Hughes was employed by DPSCS as a Parole and Probation Agent – a skilled service position in the State Personnel Management System. On August 13, 2013, shortly after Ms. Hughes arrived at work, she was observed by her supervisor as "disheveled, slurring her speech, rubbing her eyes and incoherent in thought and delivery." She was sent for a urinalysis drug test based on reasonable suspicion of substance abuse. On

---

[5] *See* Part II.A of this opinion below.

September 4, 2013, the medical review officer reported the results of that test as positive for illegal use of drugs.[6]

In early October 2013, DPSCS sent Ms. Hughes a Notice of Termination from her position with the agency effective at the close of business on October 2, 2013.[7] The notice was signed by a Regional Executive Director of DPSCS as her appointing authority on September 24, 2013 – which was indicated as the "date of notice." The notice was also signed that same date by the Director of the Division of Parole and Probation. A final signature block, labeled "Approved by: Head of Principal Unit," was signed by the Secretary of DPSCS on September 30, 2013. The notice advised her that she had 15 days, upon receipt of the notice, to file an appeal in writing to the Secretary of DPSCS. The notice did not mention that, if the Secretary of DPSCS did not respond to such an appeal within 15 days, the appeal would be deemed denied. Nor did the notice mention the right to a second-tier appeal to the Secretary of DBM for a hearing or provide a statutory citation

---

[6] Ms. Hughes has denied using illegal drugs and questioned the accuracy of the test result, although she does not contest the fact that the medical review officer reported that result. She asserts that she had taken certain drugs as part of her recovery from an automobile accident that year which she believes might account for a positive drug test. The truth of this assertion is not material to the resolution of the legal issues before us.

[7] Ms. Hughes asserts in her complaint that she did not receive the notice until October 3, 2013. Resolving the date of receipt would be important if, as earlier in this case, the parties were disputing the timeliness of her initial appeal. That issue, however, is not before us. *See* footnote 10 below.

8

for the administrative appeal rights (although it did generically refer to "Title 11 of the State Personnel and Pensions Article" as the authority for terminating her).

## 2. First-Tier Administrative Appeal

Ms. Hughes mailed a written appeal to the Secretary of DPSCS on October 17, 2013. The Secretary of DPSCS did not reply to Ms. Hughes' appeal. Nearly a year later, on September 16, 2014, after Ms. Hughes had obtained counsel, her lawyer sent the Secretary of DPSCS a letter requesting a meeting to discuss the matter.[8] The Secretary of DPSCS did not respond.

## 3. Proceedings in the Circuit Court

On December 18, 2014, Ms. Hughes filed a Petition for Writ of Mandamus in the Circuit Court for Baltimore County asking that court to compel DPSCS to respond to her appeal.[9] In that pleading she asserted that she had been wrongfully terminated from her position. In addition, apparently unaware of SPP §11-108(b)(2) or its significance as construed in *Fisher v. Eastern Correctional Institution,* she asserted that the Secretary of DPSCS had failed to respond to her timely administrative appeal and that she was entitled to a detailed written response by the Secretary of DPSCS under SPP §11-109(e)(2). She

---

[8] Neither the October 17, 2013, administrative appeal nor the September 16, 2014, letter appears in the record of this case.

[9] Ms. Hughes originally named Gregg Hershberger, then Acting Secretary of DPSCS, as the defendant. Stephen Moyer succeeded Mr. Hershberger as Secretary in January 2015 and was substituted as the defendant in the case.

9

asked the court to order the Secretary to provide that response. She also asked the court to reinstate her employment with DPSCS, award her back pay and back leave time, and grant "such other relief as the Court deems fair, just and necessary."

Ms. Hughes' reliance on SPP §11-109(e)(2) set her complaint on a collision course with this Court's decision in *Fisher*. Unsurprisingly, DPSCS filed a motion to dismiss that relied on SPP §11-108(b)(2), as construed in *Fisher*. Among other things, DPSCS argued in that motion that Ms. Hughes was not entitled to a writ of mandamus because she had failed to pursue the available administrative remedy – in particular, the second-tier administrative appeal to the Secretary of DBM under SPP §11-110. DPSCS argued that Ms. Hughes' first-tier appeal had ended with a deemed denial under SPP §11-108(b)(2) when the Secretary of DPSCS had not responded to it by the 15th day. Applying this Court's holding in *Fisher*, DPSCS reasoned that the deadline for seeking a second-tier review with the Secretary of DBM was, per SPP §11-110(a), 10 days after that date – a date that had long since passed. Accordingly, DPSCS concluded, her failure to pursue the available administrative remedy meant she had not been denied any right to which she was entitled and there was therefore no basis for issuing a writ of mandamus.[10]

---

[10] In the Circuit Court, DPSCS also argued that Ms. Hughes had been late in filing her first-tier administrative appeal when she mailed, rather than filed, her appeal on the last day of the 15-day period for filing that appeal, with the result that the agency received her appeal several days later. Ms. Hughes countered that the date of mailing should be regarded as the date of filing. The Circuit Court declined to decide the motion on that basis – or on a potential argument that Ms. Hughes was barred by laches for having waited more than a year from the filing of her first-tier administrative appeal to seek relief – because the

Confronted with SPP §11-108(b)(2) and the *Fisher* decision, Ms. Hughes conceded that the deemed denial provision applied to her situation, but pivoted in her response to the motion to dismiss to assert – for the first time – that she had not received adequate notice of her appeal rights, as required by SPP §11-106(a)(5). Notice was inadequate, she argued, because DPSCS had not informed her of the effect of the deemed denial provision of SPP §11-108(b)(2) on her right to seek a second-tier administrative appeal. In a supplemental response, she argued that the guarantees of procedural due process in the federal and State constitutions also required fuller notice.

After hearing legal argument at a hearing on April 14, 2015, the Circuit Court agreed with DPSCS that, under SPP §11-108(b)(2) as construed in *Fisher*, Ms. Hughes' initial appeal had been denied and the 10-day period for pursuing a second-tier administrative appeal had expired. The court rejected Ms. Hughes' argument that she was entitled to fuller notice of her appeal rights, noting that DPSCS had informed her of her right to a first-tier appeal – the appeal to which she was eligible upon termination. The court also observed that "people are presumed to know the law." The court issued a written order dismissing her mandamus action that same day.

---

court would need to look to facts outside those alleged in the complaint to decide the case on those grounds. DPSCS has not pressed either of those arguments in the appellate courts.

4.    Judicial Appeal

Ms. Hughes appealed.  The Court of Special Appeals affirmed the decision of the Circuit Court, also relying on *Fisher*.  The intermediate appellate court opined that Ms. Hughes had made a "compelling argument" that, as a matter of policy, a disciplined employee should receive a more complete notice of appeal rights, but believed that it was an argument to be made to the General Assembly.

We granted Ms. Hughes' petition for *certiorari*.  Ms. Hughes asks us to reverse the dismissal of her complaint for two reasons, which we re-order and summarize as follows.[11] First, she argues that we should reconsider or overrule our recent decision in *Fisher v. Eastern Correctional Institution* concerning the relationship of SPP §11-109(e)(2) and SPP

---

11 As they were in the Circuit Court, Ms. Hughes' contentions before us are a moving target.  In her petition for certiorari, Ms. Hughes phrased her two questions, as she had in her brief to the Court of Special Appeals, as follows:

Did the lower Court err in failing to consider the notice requirements imposed on the State by [SPP] §11-106(a)(5)?

Did the lower Court err in failing to consider the minimum level of due process due to the Petitioner prior to the State's deprivation of a property right?

In her brief before us, she has recast them as follows:

Was the State's notice to Appellant sufficient under [SPP] §11-106(a)(5) and consistent with the Court of Appeals' holding in Fisher v. Eastern Correctional Institution, 425 Md. 699, 43 A.3d 338 (2012)?

Did the Court of Appeal[s] fail to consider the minimum level of due process due to an Appellant prior to the State's deprivation of a property right in Fisher v. Eastern Correctional Institution, 425 Md. 699, 43 A.3d 338 (2012)?

12

§11-108(b)(2), in light of the due process concerns that she believes were neglected in that opinion. Second, in the alternative, she asserts that, in light of *Fisher*'s holding that the deemed denial provision of SPP §11-108(b)(2) triggers the time for seeking a second-tier appeal, DPSCS failed to provide her with adequate notice of her appeal rights, as required by SPP §11-106(a)(5).

DPSCS takes a contrary position on both issues raised by Ms. Hughes. In the alternative, it asserts that she is disqualified from seeking relief in this action because she failed to exhaust her administrative remedies.

## II

## Discussion

### A. *Standard of Review*

As a preliminary matter, we take brief detour to sort out a procedural ambiguity that bears on the standard of review and ultimately on the disposition of this appeal.[12] Ms. Hughes titled her initial pleading a "Petition for Writ of Mandamus," but did not indicate what type of mandamus proceeding she intended. A common law mandamus proceeding seeks to compel a public official to perform a clear legal duty that is not discretionary and that does not depend on personal judgment. *Falls Road Community Ass'n v. Baltimore County*, 437 Md. 115, 139 (2014). It is initiated by a pleading entitled a "complaint." *See* Maryland Rule 15-701. By contrast, a proceeding for administrative mandamus seeks

---

[12] *See* Part II.E of this opinion.

13

judicial review of administrative action that is not otherwise subject to judicial review. Maryland Rule 7-401. It is initiated by filing a "petition" in accordance with the rules governing review of administrative agency action. *See* Maryland Rule 7-402 (incorporating procedures set forth in Maryland Rules 7-202 and 7-203).

Ms. Hughes' initial pleading seems to straddle these two procedures. On the one hand, it is entitled a "petition" and asks the Circuit Court to overturn the agency action, reinstate her employment, and award her back pay – factors that suggest an administrative mandamus proceeding for review of agency action. On the other hand, she also asks the court to direct the Secretary of DPSCS to carry out specific actions to process her administrative appeal under the statute to which she claims a clear legal right – which sounds more like common law mandamus. In addition, administrative mandamus is only available when "review is not expressly authorized by law,"[13] and there is already a statutory path for judicial review of an agency's disciplinary decisions.[14] Thus, common law mandamus is the more viable action. Moreover, the parties have litigated the case to date as though this is a common law mandamus proceeding. Finally, neither of the issues identified for decision concerns the merits of Ms. Hughes' termination – which depended

---

[13] Maryland Rule 7-401(a).

[14] In particular, SPP §11-110(d) provides that the OAH decision at the second-tier of the administrative appeal process is the final administrative decision. The State Administrative Procedure Act provides for judicial review of such a decision. SG §10-222.

on an exercise of judgment – but rather whether Ms. Hughes has a "clear legal right" to continue her administrative appeal seeking review of that decision.

Having found our way to the right ballpark, we now establish our position on the field of play. DPSCS responded to the "Petition for Writ of Mandamus" with a "Motion to Dismiss," presumably under Maryland Rules 15-701(c) and 2-322(b) for failure to state a claim on which relief could be granted (although the motion did not so state). DPSCS attached a copy of the Notice of Termination to that motion and relied on that exhibit, as did the Circuit Court, effectively converting the motion to dismiss into a motion for summary judgment. *See* Maryland Rule 2-322(c). As was evident in Ms. Hughes' opposition to the motion, she does not contest the accuracy of that exhibit. The bottom line was that the parties did not dispute the facts material to the Circuit Court's decision.

In any event, whether we view the Circuit Court's action as the grant of a motion to dismiss or of a motion for summary judgment, that decision turned on a legal issue. In either case, appellate review is conducted without deference to the Circuit Court. *See Mathews v. Cassidy Turley Maryland, Inc.*, 435 Md. 584, 598-99 (2013) (summary judgment); *Scull v. Groover, Christie & Merritt, P.C.*, 435 Md. 112, 119 (2013) (grant of motion to dismiss for failure to state a claim).

## B.     *Whether* **Fisher** *Should be Reconsidered*

With respect to her first argument, Ms. Hughes relies on SPP §11-109(e)(2) and repeats the argument that was made in *Fisher* that we should ignore the deemed denial provision of SPP §11-108(b)(2) and forgive a belated second-tier administrative appeal

15

when the agency fails to issue a written denial at the first tier. As outlined earlier in this opinion, the *Fisher* decision construed the administrative appeal provisions of the State personnel law with careful attention to the plain language of the statute and its legislative history. This Court concluded that "[r]egardless of whether the head of the principal unit issues a written decision within fifteen days after receipt of the employee's appeal in accordance with [SPP] §11-109(e)(2), or the appeal is denied by operation of [the deemed denied provision of SPP] §11-108(b)(2), the employee who desires to take a further appeal must do so within ten days after the earlier of these occurrences, pursuant to [SPP] §11-110(a)(1)." *Fisher*, 425 Md. at 713.

Ms. Hughes asserts that the *Fisher* court failed to take into account constitutional due process concerns in construing the statute. Ms. Hughes' preferred construction would essentially read SPP §11-108(b)(2) – a provision designed to expedite a disciplined employee's appeal, presumably to the benefit of the employee – out of the statute. We decline to reconsider our construction of the deemed denial provision in *Fisher*. Ms. Hughes' due process concerns are more appropriately considered with regard to her second argument – the adequacy of notice.

## C.  *Whether Ms. Hughes Received Appropriate Notice of Her Appeal Rights*

Ms. Hughes' second argument raises an issue not addressed in *Fisher*: What, if any, notice must be given under SPP §11-106(a)(5) to a disciplined employee concerning the second tier of the administrative appeal process and of the effect of the deemed denial provision on the deadline for invoking that appeal?

16

1.      Preservation of the Issue

A potential obstacle to addressing that issue in this case is that it is only tenuously related to the "Petition for Writ of Mandamus" that initiated this action and whose dismissal is the subject of this appeal. That petition does not allege inadequate notice, does not refer to SPP §11-106(a)(5) or the notice element of procedural due process, and does not relate the requested relief to a lack of adequate notice. However, as explained above, the issue was raised in and decided by the Circuit Court – as well as the Court of Special Appeals – and was raised in Ms. Hughes' petition for *certiorari*. Accordingly, we will exercise our discretion to address it in this opinion. *See* Maryland Rule 8-131.

2.      Different Views of the Notice Requirement

SPP §11-106(a)(5) requires a State agency to provide a disciplined employee with written notice of the employee's appeal rights. Here, the appointing authority, a Regional Director of DPSCS, sent Ms. Hughes a Notice of Termination that explained the agency's reasons for ending her employment and informed her that she had 15 days to file an appeal to the Secretary of DPSCS. The notice did not mention that a failure of the Secretary of DPSCS to reply to such an appeal within 15 days would effectively deny her appeal. Nor did it disclose that a denial by silence would trigger a 10-day deadline for Ms. Hughes to take further appellate action. Nor did the notice cite the statutory sections – as opposed to the generic subtitle authorizing employee discipline – that provided Ms. Hughes with her administrative appeal rights.

17

The parties disagree as to whether the notice provided to Ms. Hughes by the Regional Director was adequate under SPP §11-106(a)(5). Ms. Hughes interprets the statute to require DPSCS to provide her with written notice of all administrative appeal rights as part of a notice of termination. Ms. Hughes argues that, by failing to do so, DPSCS failed to comply with SPP §11-106(a)(5) and also violated the due process guarantees of the State and federal constitutions.

DPSCS has a different interpretation of the statute. DPSCS counters that the Notice of Termination adequately informed Ms. Hughes of the specific administrative appeal right that was available to her at the time she received the notice. DPSCS reasons that the second-tier appeal right was not yet "ripe" and, indeed, would never have become available if Ms. Hughes had been successful at the first tier. The agency concludes that it would not make sense for it to inform Ms. Hughes of a second-tier appeal right that might never apply. Lastly, DPSCS argues that further elaboration of administrative appeal rights was not required, citing the legal maxim that "everyone is presumed to know the law."[15]

---

[15] *See Benik v. Hatcher,* 358 Md. 507, 532 (2000) ("[E]veryone is presumed to know the law regardless of conscious knowledge or lack thereof, and are presumed to intend the necessary and legitimate consequences of their actions [or inactions] in its light.") (internal citations and quotation marks omitted).

3. Construing SPP §11-605(a)(5)

Determining the nature of the notice required under SPP §11-106(a)(5) is an issue of statutory construction. Statutory construction is a quest for legislative intent. As always, we begin with the language of the statute considered in context, refer to its legislative history to resolve ambiguities, and consider the consequences of alternative interpretations in light of that context and history. *Blue v. Prince George's County*, 434 Md. 681, 689 (2013).

*Statutory Language*

We look first to the language of the statute. In pertinent part, SPP §11-106(a)(5) states: "(a) Before taking any disciplinary action related to employee misconduct, an appointing authority shall: ... (5) give the employee a written notice of the disciplinary action to be taken and the employee's *appeal rights.*" (emphasis added). As is evident, the plain language of SPP §11-106(a)(5) uses the plural form in directing agencies to give a disciplined employee written notice of the employee's appeal rights. This suggests that an agency would give some information as to the overall administrative appeal process, and not just the immediately available procedure. At the very least, it is ambiguous as to the extent of detail required. Consideration of context may provide some clarity.

*Context – Due Process*

When a State employee has tenure or may be dismissed only for cause – as was the case with Ms. Hughes – the employee has a property interest in public employment. Due process ordinarily requires the opportunity for a hearing in connection with a deprivation

19

of that interest.  *See Maryland Classified Employees Ass'n. Inc. v. State*, 346 Md. 1, 21-22 (1997); *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).   The administrative appeal process created in SPP §11-101 *et seq.* provides for such a hearing – a contested case hearing at the second tier of the process.  The opportunity for such a hearing was considered a key element to ensure that the disciplinary process complied with the dictates of due process, as the legislative history of the statute demonstrates.

*Context - Legislative History*

As outlined in detail in *Fisher*, the disciplinary and appeal procedures set forth in SPP §11-101 *et seq.* were enacted in 1996 based on the recommendations of the Task Force to Reform the State Personnel Management System.  *See* Chapter 347, Laws of Maryland 1996; *Fisher,* 425 Md. at 711-13.  Prior to the enactment of that law, the termination of a State employee like Ms. Hughes was governed by procedures set forth in SPP §9-201 *et seq*. (1994).  Those procedures allowed for termination for cause – called "removal" at that time – only upon written charges given to the employee and only after the employee was given "an opportunity to be heard on appeal."  SPP §9-204 (1994).  If an employee appealed the termination, the Secretary of Personnel was required to hold a hearing within 90 days.  SPP §9-206 (1994).  An opinion of the Attorney General had reviewed those procedures and concluded that they complied with the mandates of due process as set forth in the

Supreme Court's *Loudermill* decision. *See* 70 *Opinions of the Attorney General* 151, 155-59 (1985).[16]

When the termination procedures were revised as part of the 1996 legislation, a question apparently arose as to whether the procedures continued to comply with the requirements of due process. The Attorney General's Office reviewed the legislation, noted that the Secretary of Personnel[17] would now serve an intermediate step in the disciplinary process before the matter was referred to OAH for a hearing, and observed that the opportunity for a hearing as well as final decision making authority were being transferred to OAH – part of what is now the second tier of the administrative appeal process.[18] The Attorney General concluded that the new procedures would not create a due process issue that would render the bill unconstitutional. *See* Letter of Attorney General J. Joseph Curran, Jr. to Governor Parris N. Glendening (May 6, 1996)

---

[16] The Attorney General's opinion evaluated the procedures as then codified in former Article 64A, §33. In 1993, that statute was recodified as part of the new State Personnel & Pensions Article. Chapter 10, Laws of Maryland 1993.

[17] As noted earlier, the Secretary of DBM was soon to succeed to this role. *See* footnote 4 above.

[18] It is perhaps also notable that the Task Force had originally recommended that the first-tier appeal be automatically waived in the case of an appeal of an employee's dismissal from employment – with the result that such an appeal would go directly to the second tier. Task Force to Reform the State Personnel Management System, Report to the Governor (January 1996) at 46. However, the first-tier appeal for terminated employees remained in the legislation as ultimately passed, perhaps because it was more consistent with the general policy of the statute that appeals should be resolved "at the lowest level possible." *See* SPP §11-108(d).

(incorporating memorandum of Assistant Attorney General David Durfee dated April 26, 1996).

*Consequences*

A construction of SPP §11-605(a)(5) that requires notice only of the first tier of the administrative appeal process could result in an employee inadvertently forfeiting access to the second tier of the appeal process and the opportunity for a hearing. If the employee is unaware of the deemed denial provision and its significance for the second-tier appeal deadline – as might well be the case with a lay employee without legal or union representation – the employee might give the agency head the benefit of a few weeks to decide the employee's appeal and miss the deadline for moving to the second tier. The deemed denial provision would then have the perverse effect not of facilitating the employee's route to an administrative hearing, as originally intended, but of denying it on the basis of ignorance, contrary to the underlying purpose of the notice requirement. In our view, the General Assembly could not have contemplated that its carefully constructed system for employee discipline would operate in that fashion.[19] As Justice Jackson put it

_____

[19] In reaching this conclusion we do not mean to suggest bad faith on the part of the agency in this case. In other respects, the Notice of Termination could be held up as a model, as government notice documents go. It provides elaborate detail as to the factual basis for the termination, quotes the various regulations that apply to those facts, and explains why termination was considered the appropriate form of discipline. It specifies in detail where to send a first-tier appeal. It may be that the failure to allude to the second-tier appeal or possibility of a deemed denial was an oversight. We were advised by agency counsel at oral argument that the notice form was being reviewed for clarification.

22

in the course of his classic description of the notice element of due process, the right to be heard "has little reality or worth unless one is informed . . . and can choose for himself whether to appeal or default, acquiesce or contest."[20] If the statutory notice requirement is construed to alert the disciplined employee to the possibility of the second-tier appeal, the deadline for invoking it, and the fact that silence as to the first-tier appeal would trigger that timeline, the employee can choose whether to appeal or default, acquiesce or contest.

4.      Presumption that Individuals Know the Law

The agency points out that neither the possibility of a second-tier appeal nor the deemed denial provision was concealed from Ms. Hughes – *i.e.*, they are clearly and publicly spelled out in the statute. Invoking the legal maxim that individuals are presumed to know the law, the agency concludes that, regardless of the precise content of the Notice of Termination, she was effectively on notice as to her appeal rights.

It is true that we would typically indulge the presumption that a person is presumed to know the law – in other words, that "ignorance of the law is no excuse." That presumption is a useful and necessary fiction in the legal system, lest litigants skirt legal obligations through simple protestations of ignorance. But there are instances where a legislature has superseded this common law principle by requiring specific notice to the

---

[20] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

23

public or to specific parties of specific legal rights.[21]  One such instance is the requirement in SPP §11-106(a)(5) that an agency provide a disciplined employee with notice of the employee's appeal rights.  The statute indicates that the General Assembly believed that a fair process required not only written notice of the specific discipline to be imposed in the employee's case (unsurprising as that notice would the only writing in which one could find the answer to that question), but also specific notice of appeal rights, even if those rights can be found in the pertinent statutes and regulations.  It may be that the Legislature recognized that such a notice would be particularly helpful, if not necessary, in a context where the employee might not have access to an attorney versed in the State personnel law.

It is common to find similar requirements in other statutes governing administrative adjudication, particularly when the adjudication may involve lay parties.  For example, the State Administrative Procedure Act requires that "[a] written statement of appeal rights shall be included with [a final] decision."  Maryland Code, State Government Article ("SG"), §10-221(b)(2).[22]  And such requirements are not peculiar to Maryland.  The model State Administrative Procedure Act, adopted by many jurisdictions, states in relevant part:

> The order must state the available procedures and time limits for seeking reconsideration or other administrative relief and must state the

---

[21] Indeed, if one fully embraced this maxim, there would be no need to advise a disciplined employee of a first-tier appeal right and SPP §11-605(a)(5) would be superfluous.

[22] This requirement applies to a final decision by OAH at the second tier of the administrative appeal process that is the subject of this case.  *See* SPP §11-110(d)(3) (stating that the OAH decision is the final administrative decision)

time limits for seeking judicial review of the agency order. A recommended or initial order must state any circumstances under which the order, without further notice, may become a final order.

Uniform State Administrative Procedure Act (2010), §413(d), 15 Uniform Laws Annotated (2016 Cum. Supp.) at 59.[23] In other contexts, courts have held that the failure to adequately provide an accurate or complete notice of administrative appeal rights, as required by law, violates procedural due process and may entitle a party to pursue an administrative appeal that otherwise would be time-barred. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990); *Shiflett v. U.S. Postal Service*, 839 F.2d 669 (Fed. Cir. 1988).

        5.      Summary

In our view, the plain language of SPP §11-106(a)(5), its evident purpose to facilitate a fair process, and its legislative history all favor an interpretation that requires an agency to provide more notice of appeal rights than just a simple reference to a first-tier appeal that does not include an opportunity for a hearing. Does this mean that an agency must include a mini-treatise in its decision that describes every potential level of appeal and review[24] of that decision up to and including how to seek a writ of *certiorari* in the

---

[23] Similar language appeared in the prior version of the model act. *See* Uniform State Administrative Procedure Act (1981), §4-215(c), 15 Uniform Laws Annotated at 95.

[24] In a technical sense, the judicial review by a circuit court that may follow an administrative appeal is not in fact an "appeal." *See* A. Rochvarg, *Principles and Practice of Maryland Administrative Law* (2011), §13.4 at 160; *see also Driggs Corp. v. Maryland Aviation Administration*, 348 Md. 389, 398-99 (1998) ("a petition for judicial review of an administrative agency order invokes the original, not the appellate, jurisdiction of the circuit court").

United States Supreme Court? No. But it surely means a meaningful signpost on the path to administrative appellate review. There must be some notice that there is a second tier to the administrative appeal process with an opportunity for a hearing and that silence from the agency at the first tier will trigger a deadline for the employee to decide whether to pursue that opportunity.[25] A form of notice that has the effect of inducing an employee to unintentionally forgo the opportunity for a hearing would be contrary to the statute.

### D. Whether Ms. Hughes Failed to Exhaust Administrative Remedies

DPSCS argues that this Court need not reach the merits of Ms. Hughes' appeal and should uphold the Circuit Court's dismissal of the petition for writ of mandamus on the alternative ground that she failed to exhaust her administrative remedies. As a general rule, if there is an available primary administrative remedy, it must be exhausted before a party may seek relief from a court. *Forster v. State, Office of Pub. Defender*, 426 Md. 565, 581 (2012). DPSCS posits that the administrative remedy available to Ms. Hughes was the two tier administrative appeal provided in SPP §11-101 *et seq.* It reasons that Ms. Hughes failed to invoke the second tier which, under SPP §11-108(b)(1), means that she is considered to have accepted the deemed denial at the first tier of the process; accordingly, she did not exhaust the available administrative remedy before filing suit.

---

[25] Given this interpretation of SPP §11-106(a)(5), we need not determine whether the constitutional guarantees of procedural due process in the federal and State constitutions required DPSCS to provide a ''fuller notice'' of appeal rights to Ms. Hughes. At oral argument Ms. Hughes' counsel conceded that providing notice of the second tier and the significance of silence at the first tier would satisfy any constitutional requirement.

This argument is somewhat circular. Ms. Hughes' complaint, at least in its final metamorphosis, is that she was not adequately informed about the deemed denial provision of SPP §11-108(b)(2) and the deadline for seeking second-tier review – with the result that the deadline passed before she invoked it, and she was deemed to have accepted it under SPP §11-108(b)(1). The failure to exhaust administrative remedies argument is, at bottom, that she cannot complain about her deemed acceptance of the deemed denial of her appeal because she is deemed to have accepted it. We will not avoid the issue on that basis.[26]

## E.      *Disposition of this Appeal*

Although we have determined that the notice of administrative appeal rights that Ms. Hughes received was insufficient in these circumstances, that does not mean that we will direct entry of judgment in favor of Ms. Hughes. At this juncture, all that has happened in the Circuit Court is the granting of the agency's motion to dismiss. The agency has not answered the complaint and, as the Circuit Court perceptively noted, there may be other defenses available to the agency, such as laches.[27] Nor has Ms. Hughes yet asked for

---

[26] It is true that, unlike the employee in *Fisher*, Ms. Hughes never attempted to pursue an appeal before the Secretary of DBM but simply demanded a response from the Secretary of DPSCS. In that sense, she was less exhaustive in pursuing an administrative remedy than Ms. Fisher. However, it appears that such an effort would likely have been futile as DPSCS would have argued that she was time-barred from presenting the merits of her appeal at the second tier – an argument accepted by the ALJ in *Fisher*.

[27] This is not an instance where a terminated employee failed to seek a second-tier appeal on the 11th day after a deemed denial – or even the 111th day. On the bare record before us, there is no indication that Ms. Hughes took any steps toward a second-tier appeal until nearly a year after her termination.

27

judgment – and ultimately she may not be entitled to the judgment she seeks in her complaint.[28] In this context, our recourse is to vacate the dismissal of the complaint and remand for further proceedings in the Circuit Court.

What Ms. Hughes had a clear legal right to was adequate notice of her administrative appeal rights pursuant to SPP §10-106(a)(5). If the Circuit Court concludes that the agency has no other valid defenses that preclude consideration of the merits of this action, it may remand for completion of the administrative appeal process. A remand that directs the Secretary of DPSCS simply to provide fuller notice without more would, of course, be a futile gesture. It is only meaningful if Ms. Hughes also is able to invoke the second-tier of the administrative appeal process, should she choose to do so.

We recognize that a remand is often an unsatisfactory outcome for all concerned – like a sporting event that ends in a tie. But sometimes it is the best that an appellate court can do.

---

[28] Ms. Hughes does not have a "clear legal right" to the specific relief sought in her complaint. As noted earlier, the specific relief Ms. Hughes requested in the petition for writ of mandamus was an order directing the Secretary of DPSCS to (1) issue a written decision on her appeal and (2) reinstate her employment with back pay and back leave. It is clear from the *Fisher* decision that she has no entitlement to the former and there is no basis at this juncture to say that she has a clear legal right to the latter. While the rules allow amendment of pleadings, *see* Maryland Rule 2-341, there is no indication that Ms. Hughes has amended her petition to include her claims relating to notice.

# III

## Conclusion

For the reasons set forth above, we hold:

1 – The failure of the head of a principal unit to respond to a first-tier administrative appeal within 15 days is deemed to be a denial of that appeal under SPP §11-108(b)(2), as previously construed in *Fisher v. Eastern Correctional Institution*.

2 – In order to comply with its obligation under SPP §11-106(a)(5) to provide a disciplined employee with notice of the employee's administrative appeal rights, the agency must advise the employee that there are two potential tiers of administrative review and that the agency's failure to respond within the time limits to a first-tier appeal will trigger the timeline for invoking the second tier of that process.

In light of those holdings, we shall reverse the dismissal of the complaint in this case and remand for consideration whether Ms. Hughes should be afforded the opportunity to pursue a second-tier appeal or whether there are other defenses that preclude providing that relief.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED WITH DIRECTION TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENT.**